**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Tanya NAPOLD, Appellant**

**No. 105 WDA 2017**

Superior Court of Pennsylvania.

Argued May 30, 2017

Filed September 15, 2017

Amber L. Archer, Allegheny County Office of Conflict Counsel, Pittsburgh, for appellant.

Paul R. Scholle, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BENDER, P.J.E., BOWES, and STRASSBURGER, JJ.*

OPINION BY STRASSBURGER, J.:

Tanya Napold (Appellant) appeals from the July 19, 2016 judgment of sentence imposed following her conviction for driving under the influence—general impairment (DUI). We affirm.

The trial court set forth the following findings of fact after Appellant's bench trial.

Pittsburgh Police Officer, Zachary Vozza, was working the "midnight shift" on Monday, April 20, 2015, when he received a call for a suspicious vehicle parked in a driveway with the music blaring. Upon responding to the call and approaching the vehicle, Officer Vozza observed a vehicle running, parked sideways on the left side of the driveway, with the music blaring and a female passed out at the wheel. Officer Vozza then tried to make contact with the driver. Officer Vozza opened the door to turn down the music and attempted to make contact with the driver to ensure her safety. Officer Vozza identified the driver of the vehicle as [Appellant]. Upon engaging with [Appellant], Officer Vozza noticed the driver had slurred speech, was mumbling and had blood-shot, glassy eyes. Additionally, Officer Vozza noted a moderate odor of alcohol coming from her breath when speaking with her. It was determined that [Appellant] did not reside at the residence

* Retired Senior Judge assigned to the Superior Court.

where she was parked in the driveway. Officer Vozza attempted to have [Appellant] step out of the vehicle. However [Appellant] tried to shut the car door on him. Officer Vozza then attempted to remove [Appellant] from the vehicle. However [Appellant] was unable to stand and fell to the ground. Prior to Officer Vozza removing [Appellant] from the vehicle, [Appellant] vomited in the car and all over herself. Officer Vozza attempted to perform standardized field sobriety tests on [Appellant]. However the tests were not performed after it became clear to Officer Vozza that [Appellant] would be unable to do so and testing was stopped for her safety. [Appellant] was read her DL–26[1] warnings and refused the blood draw.

Trial Court Opinion, 3/2/2016, at 2–3.

Based on this incident, Appellant was charged with two counts of driving under the influence pursuant to 75 Pa.C.S. § 3802(a)(1), one count for general impairment and one count for general impairment with refusal. A bench trial occurred on April 1, 2016, and Appellant was found guilty of violating both counts of 75 Pa.C.S. § 3802(a)(1).

A sentencing hearing was held on July 19, 2016. At that hearing, counsel for Appellant argued as a motion for extraordinary relief that pursuant to the United States Supreme Court decision in **Birchfield v. North Dakota**, —— U.S. ——, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016),[2] the trial court should "set aside the verdict at [the refusal] count and dismiss that charge." N.T., 7/19/2016, at 3. The Commonwealth did not object, and the trial court dismissed that charge. Appellant was then sentenced to six months' probation for the general impairment count, which is the mandatory minimum sentence for a first DUI without refusal.[3]

Appellant filed a post-sentence motion challenging both the weight of the evidence and the sufficiency of the evidence to sustain her conviction. That motion was denied by operation of law on January 10, 2017. Appellant timely filed a notice of appeal. The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. Appellant complied, raising the same issues presented in her post-sentence motion.

Subsequently, Appellant filed a motion to amend her concise statement based on our Supreme Court's grant of *allocatur* in **Commonwealth v. Carley**, 141 A.3d 1287 (Pa. Super. 2016).[4] Appellant's motion was

---

1. The DL–26 form contains warnings of the potential consequences of an individual's refusal to consent to a blood test, including that the individual's license could be suspended for at least one year, and that, if convicted of violating 75 Pa.C.S. § 3802(a), the individual will face more severe penalties because of the refusal.

2. "In *Birchfield*, the Supreme Court of the United States held that police can compel a driver to give a breath sample without a warrant; however, police cannot compel a driver to provide a blood sample without first obtaining a search warrant except in certain limited circumstances." **Commonwealth v. Giron**, 155 A.3d 635, 640 (Pa. Super. 2017).

3. *See* 75 Pa.C.S. § 3804(a)(1)(i).

4. In *Carley*, this Court held that an "appellant did not have a constitutional right to refuse to consent to chemical testing." 141 A.3d at 1291. Our Supreme Court granted *allocatur* limited to the following issue:

   When a defendant, following an arrest for DUI, refuses to provide blood for the purposes of chemical testing, is enhanced criminal punishment under 75 Pa.C.S. § 3803(b)(4) and 75 Pa.C.S. § 3804(c) constitutional, when such refusal constitutes the right to refuse a warrantless search, such right provided by the Fourth Amendment to the Constitution of the United States of America?

granted and an amended concise statement was filed, which added the following issue: "[Appellant] alleges that [the trial court] erred in considering the refusal to submit to blood testing as evidence of the defendant's consciousness of guilt." Concise Statement, 2/7/2017, at ¶ 10.

On appeal, Appellant sets forth one issue for our review: "Whether the trial court erred when it considered the refusal to submit to a blood test as substantive evidence in violation of her constitutional rights[.]" Appellant's Brief at 3. Appellant recognizes that she did not raise this issue in the trial court, but argues that because *Birchfield* was not decided until after trial, "the matter was not at issue at the time of trial, and [Appellant] is entitled to the protection of the rule on appeal." *Id.* at 10.

■ Before we reach the merits of this issue, we must determine whether it has been preserved for our review. It is well-settled that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a). The decision in *Birchfield* announced a new criminal rule. When a United States Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 351, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). "Case law is clear, however, that in order for a new rule of law to apply retroactively to a case pending on direct

appeal, the issue had to be preserved at all stages of adjudication up to and including the direct appeal."[5] *Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649, 652 (2001) (internal citations and quotation marks omitted); *see also Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa. Super. 2014) *(en banc)* ("To be entitled to retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below.").

■ Thus, in order to challenge the admissibility of Officer Vozza's testimony at this juncture, Appellant would have had to have filed a motion *in limine* to prohibit the testimony prior to trial or to have objected to this testimony during trial. Since neither occurred, we must find the issue waived. *See Tilley.*[6]

Judgment of sentence affirmed.

Judge Bowes files a concurring opinion.

PJE Bender files a concurring statement in which Judge Strassburger joins.

## CONCURRING OPINION BY BOWES, J.:

I agree that Appellant waived the opportunity to claim that the trial court erred in considering Appellant's refusal to submit to blood testing as evidence of her consciousness of guilt. I therefore join the opinion, but with the understanding that nothing we said implicitly endorses the conclusion that, but for waiver, she would have prevailed.

*Commonwealth v. Carley*, 2017 WL 203678, at *1 (Pa. Jan. 18, 2017) *(per curiam)*. The Supreme Court remanded the case to this Court to reconsider this issue in light of *Birchfield*.

**5.** "[A]n exception to the issue-preservation requirement exists where the challenge is one implicating the legality of the appellant's sentence." *Commonwealth v. Barnes*, 151 A.3d

121, 124 (Pa. 2016) (citation omitted). Here, although Appellant was convicted of DUI— general impairment with refusal, that conviction was set aside and she was not sentenced on it.

**6.** Appellant has abandoned her weight-of-the-evidence and sufficiency-of-the-evidence claims on appeal.

The ramifications of *Birchfield v. North Dakota*, —— U.S. ——, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), with respect to implied consent issues, remains to be seen, as demonstrated by *Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017). Therein, a majority of our High Court agreed that an unconscious driver retained the statutory right to refuse a blood draw, since that right applies to all DUI arrestees. *See* 75 Pa.C.S. § 1547(a) (motorist is deemed to have consented to chemical testing of breath or blood if police officer has reasonable basis to suspect motorist is impaired by influence of alcohol or a controlled substance); § 1547(b) (consequences for refusal). A majority of the Court determined that "Subsection 1547(b)(1) confers upon all individuals under arrest for DUI an explicit statutory right to refuse chemical testing, the invocation of which triggers specified consequences." *Id.* at 1171.

Justice Wecht, joined by Justices Donohue and Dougherty, further expressed the view that the warrantless blood draw was not saved under an implied consent theory, *i.e.*, by voluntarily operating a vehicle the driver implicitly consented to the blood draw. Those three Justices opined that the driver must be given the chance to refuse, not only as a statutory right, but as a constitutional command. "This conclusion not only is commanded by the statute; it is a constitutional necessity." *Id.* at 1178 (footnote omitted). Justice Todd filed a concurring opinion, stating that the statutory violation was enough to decide the case, and declined to address the constitutional dimensions.

Chief Justice Saylor, joined by Justice Baer, filed a concurring opinion which disagreed with the view that Myers did not impliedly consent to a blood draw. "[I]t seems to me that the voluntary act of operating a vehicle suffices to establish the initial consent to chemical testing." *Id.* at 1182 (Saylor, C.J., concurring). Justice Mundy also expressed that view in dissent. "The text reveals the General Assembly's intent to generally deem all drivers on Pennsylvania's roads as having consented to blood or breath tests.... one who has been deemed to have given consent and does not affirmatively revoke consent has still given it." *Id.* at 1186 (Mundy, J., dissenting). Justice Mundy further noted that "*Birchfield* stands for nothing more than the proposition that if a conscious driver refuses a blood draw, that driver cannot be subjected to criminal punishment for his or her refusal." *Id.* at 1188 (Mundy, J., dissenting).

Chief Justice Saylor and Justice Baer departed from Judge Mundy's view of implied consent with respect to the latter conclusion. Those Justices would have held that suppression was required under *Birchfield*, on the basis that criminal penalties would have attached if the driver had actually refused.[1]

*Myers* would not, of course, control this issue, and there is a significant distinction between imposing criminal penalties for refusing to consent to a blood draw versus civil or evidentiary consequences. As the Chief Justice expressed, "I believe that the **criminal** penalties attached to a refusal to take a blood test render the statutory scheme in violation of the Fourth Amendment to the United States Constitution pursuant to [*Birchfield*]." *Myers*, 164 A.3d at 1182 (Saylor, C.J., joined by Baer, J.) (emphasis added). That qualifier is significant. *Birchfield*, while rejecting the theory that implied consent statutes could always justify a blood draw whereas the search incident to arrest rationale does not, distanced itself from the precise conclusion Appellant asked us to reach in this appeal.

1. Justice Donohue joined this portion of the Chief Justice's concurrence.

Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. **Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.**

*Birchfield, supra* at 2185 (emphasis added, citations omitted). Thus, Appellant is incorrect when she posits that, since she "had a constitutional right to refuse to submit to blood testing, her invocation of that right cannot be used as substantive evidence of guilt." Appellant's brief at 13. That conclusion is far from clear. Indeed, Justice Wecht's opinion in *Myers* did not reach the issue of "whether Myers may be deemed to have 'refused' so as to sustain a **driver's license suspension** ... as such a determination lies beyond the scope of this decision." *Myers*, 164 A.3d at 1182 (Wecht, J., joined by Donohue, J., and Dougherty, J.) (emphasis added).

Likewise, the application of *Birchfield* to this issue is far beyond what we decide today. It is enough to say Appellant waived the opportunity to litigate that issue. With that understanding, I join.

## CONCURRING STATEMENT BY BENDER, P.J.E.:

I am constrained to agree that Appellant has waived the issue she seeks to raise herein. *See Commonwealth v. Cabeza*, 469 A.2d 146, 148 (Pa. 1983) (holding "that where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases *where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal*") (emphasis added); *see also Commonwealth v. Tilley*, 780 A.2d 649, 652 (Pa. 2001).

However, I am compelled to note my disagreement with the rule expressed in *Cabeza* and reiterated in *Tilley*. In my view, we are essentially requiring defense counsel to predict, as if a fortuneteller, changes that *might* someday be made in the law, and to assert—at all stages of adjudication and appeal—any and every conceivable claim they can concoct. At the same time, however, if counsel fails to meet this requirement, we will likely *not* deem them ineffective. *See Commonwealth v. Gribble*, 863 A.2d 455, 464 (Pa. 2004) ("Counsel cannot be deemed ineffective for failing to predict developments or changes in the law.").

The only logical, fair, and efficient practice would be to consider an issue preserved when it is raised in a timely fashion *after* the creation of the new rule on which it is grounded. Unfortunately, that is not the law at this time. Therefore, I must reluctantly concur.

Judge Strassburger joins this concurring statement.