2018 PA Super 132

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH R. MOSER | : | No. 1225 WDA 2017 |

Appeal from the Order Entered August 1, 2017
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000223-2015

BEFORE:    BENDER, P.J.E, SHOGAN, J., and STRASSBURGER,* J.

DISSENTING OPINION BY STRASSBURGER, J.:    FILED: May 18, 2018

In this appeal, the Commonwealth asks this Court to reverse the trial court's order, which granted Moser's motion to suppress his blood test results.    The Majority agrees with the Commonwealth, concluding that "Moser's consent was not tainted by the threat of additional criminal penalties as outlined in form DL-26, and therefore, was not obtained in violation of Birchfield[1] and Evans.[2]"    Majority at 8.    In doing so, the Majority misconstrues the trial court's findings of fact and misapplies the relevant case law.    Accordingly, I respectfully dissent.

Following a suppression hearing, the trial court granted Moser's motion to suppress because it found that Moser consented to the blood draw after

_____

[1] Birchfield v. North Dakota, __ U.S. __, 136 S.Ct. 2160 (2016).

[2] Commonwealth v. Evans, 153 A.3d 323 (Pa. Super. 2016).

*Retired Senior Judge assigned to the Superior Court.

he was read the DL-26 form. See Trial Court Order, 8/1/2017 (finding that Moser "consented to the blood draw after being informed that he faced enhanced criminal penalties for failure to do so as explained to him by the officer through the DL-26 form, and given the totality of the circumstances, [Moser's] consent was invalid"); Trial Court Opinion, 9/26/2017, at 7 (finding same). Notwithstanding this explicit finding, the Commonwealth and the Majority instead fixate on an undeveloped part of the record to reach the conclusion that Moser consented to the blood draw before he was read the DL-26 form:

> [Moser] was handcuffed, placed under arrest, and put into the back of a patrol vehicle. Trooper Tononi confirmed that [Moser] was taken into custody and then transported to Westmoreland County Hospital. On the way to the hospital, Trooper Johnson and Trooper Tononi informed [Moser] as to why they were going, and requested that [Moser] submit to a blood test to determine his BAC, and [Moser] agreed.

Trial Court Opinion, 9/26/2017, at 6 (record citations and footnote omitted).

The suppression and preliminary hearing transcripts do not provide any elaboration on what the troopers specifically asked of Moser in the patrol vehicle regarding the blood test, nor does it provide any detail whatsoever as to how Moser allegedly "agreed." Regardless, the Commonwealth seizes on this ambiguous encounter to support its argument that Birchfield is inapplicable. The Majority agrees with the Commonwealth's argument, relying on this Court's recent decision in Commonwealth v. Haines, 168 A.3d 231 (Pa. Super. 2017), for support. In Haines, this Court reasoned

- 2 -

that "if Haines validly consented before being informed that he faced enhanced criminal penalties for failure to do so, then his consent would not be tainted by the warning and the blood test results would be admissible." Id. at 236 (emphasis in original). While I agree with the Majority that Haines is instructive, I do not reach the same conclusion as to the Commonwealth's argument.

In Haines, it was unclear whether the trial court found that the defendant consented before or after the DL-26 form was read. That is not the case here. As noted above, supra, the trial court explicitly found that Moser consented after he was read the DL-26 form. Surprisingly, the underlying facts here are almost identical to another recent case, which the Majority inexplicably distinguishes, wherein the trial court also found that the defendant consented only after being read the DL-26 form. In that case, after the defendant, Evans, was arrested for DUI,

> Officer Green placed [Evans] in the back of the patrol car and advised [Evans] that he was going to take him to submit to a chemical test of blood. Lieutenant Beckus testified that [Evans] [j]ust kind of shook his head and said okay.
>
> As Lieutenant Beckus testified, when they arrived at the hospital, the officers took [Evans] to the laboratory and Officer Green advised [Evans] of [] the implied consent warnings [].
>
> * * *
>
> Lieutenant Beckus testified that, after [Evans] was informed of the above, [Evans] agreed to submit to the requested blood draw.

- 3 -

Evans, 153 A.3d at 324–26 (footnotes, quotation marks, and record citations omitted). Just as in Moser's case, the trial court found that Evans consented to the blood draw after being read the implied consent warnings by the officer, notwithstanding his earlier ambiguous acquiescence to a blood test while handcuffed in the patrol car. Id. at 326. Thus, this Court held that Birchfield applied, and vacated the order denying Evans's suppression motion because Evans "only consented to the warrantless blood draw after being informed, by the police, that refusal to submit to the test could result in enhanced criminal penalties." Id. at 331.

I find the same scenario occurred here, and that the trial court did not err in finding, based on the totality of the circumstances, that Moser did not consent to the blood test until after he was read the DL-26 form.[3] Accordingly, I would affirm the trial court's order granting suppression because Moser's consent was invalid under Birchfield. See Evans, supra. See also Commonwealth v. Kurtz, 172 A.3d 1153, 1161 (Pa. Super.

---

[3] Even if the trial court had found that Moser consented to the blood draw before he was read the DL-26 form, he had the right to withdraw that consent at any point until the needle was placed in his arm and blood was withdrawn. See Commonwealth v. Myers, 118 A.3d 1122, 1127 n.5 (Pa. Super. 2015) (noting that a driver's "initial consent does not preclude him from revoking his consent to the test. The [implied consent] statute grants an explicit right to a driver who is under arrest for driving under the influence to refuse to consent to chemical testing."). The trial court properly considered the totality of the circumstances from the time the police came into contact with Moser until his blood was drawn, and determined that his consent was invalidated by the threat of enhanced criminal penalties if he refused.

2017) ("Because the suppression court concluded that Kurtz consented to the blood draw after being informed that he faced enhanced criminal penalties for refusal, the court did not err in finding that his consent was involuntary under the circumstances.").[4]

In its second claim, the Commonwealth argues that a good-faith exception to the exclusionary rule should apply to pre-Birchfield cases. Commonwealth's Brief at 16-30. "The good-faith exception distinguishes the Fourth Amendment of the United States Constitution from its Pennsylvania counterpart since it is settled that under Article I, Section 8 of the Pennsylvania [C]onstitution, a good[-]faith exception to the exclusionary rule does not exist." Commonwealth v. Updike, 172 A.3d 621, 626 (Pa. Super. 2017) (quotation marks and some citations omitted).

After reviewing the omnibus pretrial motion, the suppression hearing transcript, the trial court order granting suppression, and the trial court's

---

[4] The Majority's conclusion that Moser waived any argument regarding the voluntariness of his consent on appeal for failure to raise it before the trial court misapplies the law. The Majority cites Commonwealth v. Little, 903 A.2d 1269 Pa. Super. 2006), and Commonwealth v. Thur, 906 A.2d 552 (Pa. Super. 2006), for the proposition that no new theories for relief on a suppression motion may be considered on appeal, yet these two cases involved criminal defendants who raised new arguments on appeal when requesting that the denial of a motion to suppress be reversed. That is not the procedural posture we are in. Here, the trial court granted Moser's motion to suppress, and the Commonwealth is appealing that decision and seeking a reversal. While it is true that we may not reverse on a new legal basis not raised before the trial court, we may affirm on any basis. See Commonwealth v. Clouser, 998 A.2d 656, 661 n.3 (Pa. Super. 2010) ("It is well-settled that this Court may affirm on any basis.").

1925(a) opinion, it is unclear whether Moser sought suppression under the federal constitution, the Pennsylvania constitution, or both. Nonetheless, both the Commonwealth and Moser address the good-faith exception under both the federal constitution and the Pennsylvania constitution. Thus, I review this claim as if Moser sought suppression under both constitutions.

This Court recently considered a case where a criminal defendant sought suppression of blood test results under the federal and Pennsylvania constitutions, and the Commonwealth sought application of the good-faith exception to the exclusionary rule. This Court affirmed the trial court's order granting suppression and refusing to apply a good-faith exception: "Given the entanglement of privacy interests inherent in a blood test administered by the state, we decline to recognize a good[-]faith exception to the exclusionary rule, as it would frustrate the purpose of Article 1, Section 8 of the Pennsylvania Constitution by undermining privacy interests." Kurtz, 172 A.3d at 1159 (citation omitted). Thus, I find that the Commonwealth is not entitled to application of a good-faith exception to the exclusionary rule.

Accordingly, I would affirm the trial court's order.