J-A30034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN FERNANDO RODRIGUEZ- | : | |
| QUIJANO | : | |
| | : | No. 407 MDA 2019 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered January 24, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0001485-2018

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                          **FILED FEBRUARY 26, 2020**

Appellant, Jonathan Fernando Rodriguez-Quijano, appeals from the

aggregate judgment of sentence of fifteen to thirty years' incarceration, which

was imposed after his jury trial conviction for four counts of persons not to

possess, use, manufacture, control, sell or transfer firearms.[1]  We affirm.

The facts taken from the trial court opinion are as follows.

> On March 15, 2018, at 9:20 a.m., State Parole Agent Larry Snyder
> (Agent Snyder), Berks County Sheriff's Deputy Craig Thorn
> (Deputy Thorn) and two other Berks County Sheriff's Deputies
> executed an arrest warrant for Fernando Rodriguez[, Appellant's
> father,] at 735 N. 8th Street, Reading, Berks County,
> Pennsylvania (Residence).  The bench warrant was issued on
> March 9, 2018, and contained the Residence's address as the
> address for Fernando Rodriguez. A prior warrant and arrest for
> Fernando Rodriguez also listed this same address.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105 (a)(1).

Upon arrival at the Residence, Deputy Thorn knocked on the door and encountered Appellant. Deputy Thorn was in a sheriff's uniform with a taser and firearm on his utility belt. Deputy Thorn explained why he was there and asked Appellant if he knew Fernando Rodriguez. Appellant informed Deputy Thorn that Fernando Rodriguez previously resided at the Residence but was kicked out within the last two weeks. Appellant informed the officers that he was the owner of the Residence. Deputy Thorn asked Appellant if the officers could come in and look for Fernando Rodriguez. Appellant agreed and invited the officers into the Residence. Deputy Thorn was outside of the Residence on the front porch when he asked [Appellant] for permission to enter.

Deputy Thorn and Agent Snyder entered the Residence and searched for Fernando Rodriguez. During their search they located two firearms in the Residence. An assault rifle was located in a first-floor back bedroom within arm's reach of Appellant's co-defendant, Luis Morales (Morales). Morales denied knowledge of the rifle and said he had just arrived two weeks ago from Florida. An additional rifle was located in Appellant's second-floor bedroom. Drug paraphernalia and ammunition were observed in both rooms. None of the firearms were reported as stolen and nobody claimed ownership of them. Deputy Thorn instructed all of the people within the house to go to the first-floor front room where they remained until the Reading Police Department arrived. The Berks County Sheriff's Office was not allowed to perform investigations so they called the Reading Police Department. They informed Appellant and the other civilians of the telephone call. There were three uniformed deputies present with four civilians and no guns were drawn. Nobody was in handcuffs. The Reading Police Department arrived a half hour from the time the deputies arrived. During that time, the deputies confirmed that Fernando Rodriguez was not present inside of the Residence.

As the deputies waited for the Reading Police Department, Deputy Guy Lehman of the Berks County Sheriff's Office (Deputy Lehman) made small talk with the individuals seated in the front room. During this conversation, Appellant spontaneously admitted that all of the firearms were his and that he had rifles in his room. This statement was not given in response to a question.

After the Reading Police Department arrived on scene, Criminal Investigator Brian Errington of the Reading Police Department (CI.

- 2 -

Errington) separated Appellant from the rest of the group and read him ***Miranda*** warnings. Appellant agreed to speak with C.I. Errington and did not ask for an attorney to be present. Appellant admitted that he had approximately four firearms in the house and that he was a convicted felon prohibited from possessing firearms. C.I. Errington also reviewed a search waiver for the Residence which was signed by Appellant and the other individuals in the home. The firearms located by law enforcement were collected and put into evidence. Appellant was taken into custody.

Trial Court Opinion at 2-4.

Appellant was arrested on March 15, 2018 and charged with five counts of persons not to possess, use, manufacture, control, sell or transfer firearms. Appellant filed a pre-trial motion to suppress any and all physical evidence on the basis that sheriff deputies unconstitutionally entered his home. In this motion, Appellant also sought to suppress any statements he made and argued he was subjected to custodial interrogation by sheriff deputies and was not given ***Miranda***[2] warnings prior to making any statements to the deputies. A hearing on Appellant's suppression motion was held on July 9, 2018. On August 23, 2018, the trial court denied Appellant's motion to suppress. Appellant proceeded to a jury trial on January 14, 2019, and he was found guilty of four counts of persons not to possess, use, manufacture, control, sell or transfer firearms.[3] On January 24, 2019, Appellant was sentenced to an

_____

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[3] The Commonwealth withdrew one count of persons not to possess, use, manufacture, control, sell or transfer firearms before trial.

aggregate sentence of fifteen to thirty years' incarceration. Appellant filed a timely post-sentence motion on February 4, 2019. The trial court denied the post-sentence motion on February 6, 2019. On March 5, 2019, Appellant filed this timely direct appeal.[4]

> Appellant presents the following issue for our review:
>
> Whether the suppression court erred in denying Appellant's pre-trial motion to suppress evidence.

Appellant's Brief at 4. In fact, however, Appellant includes four issues under separate headings in the argument section of his brief, with each heading encompassing several sub-issues, a total of eight issues for our review. We note that issues not presented in the statement of questions involved portion of an appellant's brief are generally deemed waived. Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail."); **Werner v. Werner**, 149 A.3d 338, 341 (Pa. Super. 2016) (internal citation omitted) ("Issues not presented in the statement of questions involved are generally deemed waived."). "However, such a defect may be overlooked where an appellant's brief suggests the specific issue to be reviewed and appellant's failure does not impede our ability to address the merits of the issue." **Id**. at 341 (internal citation and brackets omitted). We

_____

[4] Appellant filed his statement of errors complained of on appeal on March 29, 2019. The trial court entered its opinion on May 20, 2019.

are readily able to discern the issues from the argument section of Appellant's brief and, therefore, we do not find waiver on this basis.

We consider Appellant's suppression issues in light of the following standard of review:

> In reviewing the denial of a suppression motion, our role is to determine whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Yim*, 195 A.3d 922, 926 (Pa. Super. 2018) (internal citations and brackets omitted). Our scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing. *Commonwealth v. Fulton*, 179 A.3d 475, 487 (Pa. 2018). For ease of discussion, we will start with the issues that Appellant presents on appeal that were duly preserved.

The first issue Appellant presents to this Court is that the sheriff deputies unconstitutionally entered his home, challenging whether the deputies had consent to enter his home and whether the deputies had probable cause that Appellant's father would be located in Appellant's home.

> The Fourth Amendment requires that, even when seeking to execute an arrest warrant, a law enforcement entry into a home must be authorized by a warrant reflecting a magisterial determination of probable cause to search that home, whether by a separate search warrant or contained within the arrest warrant itself. Absent such a warrant, an entry into a residence is excused only by a recognized exception to the search warrant requirement.

*Commonwealth v. Romero*, 183 A.3d 364, 405–06 (Pa. 2018). One exception to the warrant requirement is a search conducted pursuant to consent. *Commonwealth v. Kurtz,* 172 A.3d 1153, 1159 (Pa. Super. 2017) (internal citation and quotation marks omitted).

> Absent a valid, implied consent, we have required suppression courts to evaluate a defendant's actual consent based on the totality of all the circumstances. . . . In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

*Id*. at 1159-60. It is within the exclusive province of the suppression court to, "pass on the credibility of witnesses and determine the weight to be given to their testimony." *Commonwealth v. Fudge*, 213 A.3d 321, 326–27 (Pa. Super. 2019) (internal citation omitted). "This Court will not disturb a

- 6 -

suppression court's credibility determination absent a clear and manifest error." *Id.*

At the motion to suppress hearing, Deputy Thorn testified as follows. On [March 15, 2018] he "attempted to serve" a "bench warrant for failure to appear for Fernando Rodriguez," Appellant's father, at the residence in question. N.T. 7/9/18 at 4-5. At "approximately 9:20 in the morning" Deputy Thorn "went to the front door [of the residence], with Agent Snyder." *Id.* at 6. Deputy Thorn was "wearing a black deputy uniform with a vest that says sheriff on the front," and had a "taser" and a "firearm" on his utility belt. *Id.* Deputy Thorn testified that his weapon was not drawn. *Id.* at 7. He testified that he knocked on the door, that Appellant "answered the door" and "opened up," that he "explained to [Appellant] what I was doing there, asked him if he knew the defendant, Fernando Rodriguez." *Id.* Deputy Thorn testified that after Appellant told him that Fernando Rodriguez had been "kicked out of the house within the last two weeks, I asked him if we could come in and take a look around just to make sure that [Fernando Rodriguez] wasn't there, and he stated that was fine, he invited me and Agent Snyder in the house." *Id.* at 7-8. Deputy Thorn elaborated that Appellant "said come on in," "that's fine." *Id.*

Appellant also testified at the motion to suppress hearing. He stated that he did not give the sheriffs permission to enter his residence. N.T. 7/9/2018 at 60. Appellant testified he told the sheriffs that Fernando

Rodriguez "didn't live there." *Id.* at 61. Appellant testified that the sheriffs stated "we still got to search the residence." *Id.* Appellant testified he stated "where's your proof to come in my house," and "where's the paperwork for you to come in my house." *Id.* Appellant testified "he just rushed in," "[h]e just walked in my house," and "I was standing in front of the door." *Id.*

The trial court made a credibility determination based upon hearing the testimony of Deputy Thorn and Appellant and determined that Appellant did give consent to Deputy Thorn to enter his home. Findings of Facts and Conclusions of Law, 8/23/18 at 2. We find no clear and manifest error in its credibility determination. *Fudge*, 213 A.3d at 326–27. Because the trial court found that Appellant gave a free and voluntary consent to Deputy Thorn for the sheriffs to enter his home, and this finding is supported by the suppression hearing testimony, the consent exception to the warrant requirement was satisfied and the Commonwealth need not demonstrate the probable cause upon which the arrest warrant was issued. *Kurtz,* 172 A.3d at 1159. Lastly, as Appellant did not present a coercion argument to the trial court, he is precluded from bringing this issue for the first time on appeal.[5] We find no

---

[5] Appellant raised the issue that his consent was coerced in his brief to this Court. However, at no point did Appellant raise this issue before the trial court. The only argument made before the trial court was that Appellant **did not** give consent for the sheriffs to enter his home. The first time Appellant argued that the consent given was coerced was in his brief to this Court. Appellant's Brief at 29. Failure to raise the issue before the trial court results in waiver. *See Commonwealth v. Napold*, 170 A.3d 1165, 1168 (Pa. Super.

error in the denial of Appellant's suppression motion on this ground. *Yim*, 195 A.3d at 926.

Next, Appellant states that the trial court erred when it denied his motion to suppress because he was subjected to custodial interrogation by the sheriff deputies without being provided *Miranda* warnings.

"Interrogation is defined as police conduct calculated to, expected to, or likely to evoke admission." *Commonwealth v. Umstead*, 916 A.2d 1146, 1152 (Pa. Super. 2007) (internal citation omitted).

> Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. [However,] volunteered or spontaneous utterances by an individual are admissible without the administration of *Miranda* warnings. When a defendant gives a statement without police interrogation, we consider the statement to be volunteered and not subject to suppression. . . . [A] statement made in a custodial setting would not be suppressed where the suspect spontaneously blurts out the statement.

*Commonwealth v. Garvin*, 50 A.3d 694, 698 (Pa. Super. 2012) (internal citations and quotation marks omitted).

A review of the motion to suppress transcripts reveals the following testimony by Deputy Lehman elicited on direct examination:

_____

2017) ("issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *see also* Pa.R.A.P. 302(a); *Commonwealth v. Douglass*, 701 A.2d 1376, 1378 (Pa. Super. 1997) (internal citation omitted) ("the failure to raise a suppression issue prior to trial precludes its litigation ... on appeal."). Accordingly, this issue is waived.

**Counsel**: And so there were 3 to 4 deputies there and 4 civilians; is that correct?

**Deputy Lehman**: Yes. There were four civilians, yes.

**Counsel**: And do you recall how long you waited for the Reading Police Department to arrive?

**Deputy Lehman**: I was a little bit – it was several minutes; at least 20 minutes I would say. They were probably busy that morning.

**Counsel**: And while you were waiting were you or other deputies conversing with the civilians?

**Deputy Lehman**: Yes.

**Counsel**: And what was said?

**Deputy Lehman**: We were making small talk. I was talking to [Appellant], . . . , and I was also talking to Luis [Morales]. . . We were just having conversations. I was talking. Luis [Morales] was explaining how we were nice guys up here in Reading. The police were nice up here. And he was explaining some of the encounters he had with the police down where he lived. So we were just joking back and forth a little bit about that. He thought we were pretty cool guys up here. He told me that – well, I asked him, I said, does he like firearms. Did you ever shoot firearms. He said, yes, all the time I shoot because my brother is in the military. I think the Navy. They go shooting all the time. So we were having chitchat back and forth like that.

**Counsel**: And towards the end of the conversation did either defendant make any incriminating statements about firearms in the house or what would be found?

**Deputy Lehman**: Yes. At one point [Appellant] told me, he said just pin these on me. He said all these guns are mine. 'Cause I asked him if they belong to anyone. He said just pin them on me. I'm the man of the house. I'll take the rap for it. He said I'm not waiving Rule 600. I'm not going straight to court. He was making statements like that.

. . .

**Counsel**: But immediately before he said just pin this all on me had you asked [Appellant] any questions?

**Deputy Lehman**: No. He just blurted that out. I was actually talking to Luis [Morales] at the time.

Note of Testimony, 7/9/2018 at 27-29.

The trial court issued the following findings of facts pertaining to this issue:

- 10 -

Deputy Lehman observed that 3 to 4 uniformed deputy sheriffs were present on scene and there were people seated in the front living room. Nobody was in handcuffs and no guns were drawn. As Deputy Lehman was talking with Mr. Morales, Mr. Rodriguez [Appellant] stated that the guns were his; he is the man of the house and to "pin" the guns on him. This statement was not made in response to any conversation. Deputy Lehman responded to [Appellant] and told him that he didn't want to "pin" the guns on anyone and just wanted to know who they belonged to.

Findings of Fact and Conclusions of Law, 8/23/18 at 3-4. The trial court concluded that Appellant's statements were volunteered and as such, even assuming the occupants were in custody for purposes of **Miranda**, the statements are admissible under Pennsylvania law. **Id**. at 11.

Because the trial court found that Appellant was not being questioned and that Deputy Lehman was talking to another person at the time Appellant made the statement, the statement was not made in custodial interrogation. **Garvin**, 50 A.3d at 698. Additionally, even if Appellant was determined to be in custody, his statement is admissible because he spontaneously blurted it. **Id.** We find that the trial court's factual findings are supported by the record and discern no error of law in the denial of Appellant's suppression motion on this ground. **Yim**, 195 A.3d at 926.

We now turn to Appellant's remaining issues. "Any issues not raised in a 1925(b) statement will be deemed waived." **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). On appeal, Appellant argues that the sheriff deputies exceeded their authority to enter the residence when they began inquiring into the ownership of the firearms, and that the waiver of his

*Miranda* rights to Reading Police was not voluntary. However, Appellant did not preserve these issues in his Pa.R.A.P. 1925(b) statement of errors complained of on appeal, therefore, these issues are waived. *See Lord*, 719 A.2d 309.

Furthermore, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." *See Napold*, 170 A.3d at 1168; *see also* Pa.R.A.P. 302(a). It is well-settled that "appellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." *Commonwealth v. Little*, 903 A.2d 1269, 1272–73 (Pa. Super. 2006) (internal citation omitted). Thus, "the failure to raise a suppression issue prior to trial precludes its litigation ... on appeal." *Douglass*, 701 A.2d at 1378. Additionally, we note, "this failure is not cured by submitting the challenge in a Rule 1925(b) statement." *Commonwealth v. Sauers*, 159 A.3d 1, 10–11 (Pa. Super. 2017).

Appellant argues that the sheriff deputies exceeded their authority to enter the residence by waiting for the Reading Police Department to arrive, that Reading Police unlawfully entered the residence, and that the firearms found in his home did not meet the plain view exception. However, Appellant did not present these issues in his motion to suppress. *See* Omnibus Pre-Trial Motion, 6/15/18. Appellant's Omnibus Pre-Trial Motion states, as the grounds for suppression, "law enforcement did not have the authority to enter the

residence . . . merely to execute an arrest warrant that was not supported by probable cause, the seizure of the items from [Appellant's] residence is unlawful," and "[l]aw enforcement did not provide [Appellant] with his *Miranda* warnings prior to interrogating him relative to the items seized from his residence . . . he did not knowingly and voluntarily waive his rights to remain silent in regards to the statements made to police." *Id*. at ¶¶ 17-26. Indeed, at the motion to suppress hearing, counsel for Appellant states, "there are two issues presented to the [c]ourt . . . the argument for the *Miranda* statements are limited to that interaction with the Sheriff's Department . . . the primary issue here is whether or not there was the ability for law enforcement [sheriff deputies] to enter the residence when they did." N.T. 7/9/18 at 64. Based on the fact that Appellant did not raise the issues that the sheriff deputies exceeded their authority to enter the residence by waiting for the Reading Police Department to arrive, that Reading Police unlawfully entered the residence, and that the firearms found in his home did not meet the plain view exception, in his motion to suppress before the trial court, we find that these issues are waived on appeal. *See Napold*, 170 A.3d at 1168; *see also* Pa.R.A.P. 302(a); *Little*, 903 A.2d at 1272-73; *Douglass*, 701 A.2d at 1378.

Based on the foregoing, Appellant is not entitled to relief. Judgment of sentence affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/2020