J-S37044-18, J-S37045-18

2018 PA Super 253

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUSTIN YIM | : | |
| | : | |
| Appellant | : | No. 3118 EDA 2017 |

Appeal from the Judgment of Sentence August 7, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003203-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUSTIN W. YIM | : | |
| | : | |
| Appellant | : | No. 3184 EDA 2017 |

Appeal from the Judgment of Sentence August 7, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003202-2016

BEFORE: OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.: **FILED SEPTEMBER 12, 2018**

Appellant, Justin Yim, appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County, which, sitting as finder of fact in Appellant's consolidated non-jury trial on stipulated facts, found him guilty on all drug-related charges he faced. Sentenced to three to 23 months' incarceration, to be followed by 4 years' probation, Appellant contends the

_____

* Former Justice specially assigned to the Superior Court.

trial court erred in denying his motion to suppress evidence obtained from his college dorm room by university public safety officers and administrators.

We affirm.

The trial court sets forth the facts and procedural history as follows:

Villanova University currently has a University police department[, which was established on August 1, 2016, after the relevant time period in question]. However, on February 13, 2016, the Public Safety Office oversaw security at the University.[] N.T. 12/19/16, at 10, 23. Public Safety [o]fficers wore uniforms but did not carry weapons or handcuffs and had no arrest powers. *Id.* at 23-26; N.T. 4/8/17, at 20. They had no legal authority and did not apprehend or arrest individuals. N.T. 4/8/17, at 20.

During the early morning hours of February 13[, 2016,] [P]ublic [S]afety officers became engaged in violent confrontations with two resident students and a female visitor who all admitted to ingesting LSD. N.T. 12/19/16, at 11-12, 23-26, 27; N.T. 4/8/17 at 20. These individuals were restrained during the assaults and Radnor Police responded and arrested the individuals. N.T 12/16/17, at 26. Due to her condition and the admission that she had ingested LSD, the female visitor was transported to the hospital. One of the resident students, Daniel Jin, lived in Good Counsel Hall, Room 339, with the Defendant [hereinafter "Appellant"]. *Id*. at 1. He was arrested and was taken to the hospital as well. 4/8/17, at 40.

Good Counsel Hall is a student residence hall that is owned and operated by Villanova University. *Id*. at 13. To obtain housing at Villanova students enter a housing contract with the University and consent to [the] search of [a] dorm room where it has been determined administratively that items or individuals in a particular room pose a possible safety or health risk to the community. *Id. See also* Exhibit CS-1. Students agree [to] comply with University policies, procedures, and regulations and to comply with the University Code of Student Conduct, Residence Life Policies and safety and security responsibilities that are set forth in the Student Handbook. . . . Appellant agreed to the terms and conditions of the housing contract on May 27, 2015, as

evidenced by his electronic submission of the housing application. Exhibit CS-2.

During the morning of February 13[, 2016,] the Villanova Director of Public Safety, David Tedjeske, was advised of the assaults that took place earlier and of the LSD consumption of the individuals involved. Specifically, he learned that Daniel Jin and his juvenile girlfriend were hospitalized after the assaults and that the pair had consumed LSD. N.T. 4/8/17, at 21.

Director Tedjeske contacted the Vice President for Student Life and the Dean of Students and requested authorization to search Jin's[ ] room out of concern that additional LSD would be on campus. The administrators gave permission for a search and Director Tedjeske contacted Thomas DeMarco, Executive Director of Student Life, who met him at Good Counsel Hall, Room 339. *Id.* at 22. Two additional public safety officers were present. *Id.* at 24.

After two attempts to reach Jin by telephone, Director Tedjeske and one of the other two officers unlocked the door with a master key and entered the room. *Id.* Contraband and cash was strewn throughout the small room. *Id.* at 26. In plain view, a syringe was on top of a desk. Appellant's passport was in a drawer of the same desk. In another drawer a prayer book was found. Inside the prayer book were two sheets of LSD "stamps" in cellophane. "One hundred" was written on the cellophane and forty-five stamps were left on one sheet. A bag of marijuana was found along with packaging paraphernalia and large bundles of cash. *See id.*, at 17-22. *See also* C-1, C-21.

After the contraband was discovered, Director Tedjeske called the Villanova University dispatcher and asked him to contact the Radnor Police Department to report the discovery of the contraband. N.T. 4/8/17, at 27. Officer Metzler, a Radnor police officer, and his supervisor [arrived at the scene, but they] remained in the hall outside the room. They never entered the room and did not participate in the search. *Id.* at 27-28, 301-31.

After Director Tedjeske and his fellow Public Safety officers completed their search, they turned the contraband and items seized over to the Radnor Police officers. *Id.* at 31. Director Tedjeske completed an investigative report, including

photographs for future use in University administrative proceedings. *Id.* at 31.

A warrant for Appellant's arrest was issued. He was arrested on February 14, 2016[, when] activity on his "Wildcat" card indicated that he returned to campus from New York. *See* N.T. 12/19/16, at 35-36; N.T. 4/8/17, at 33.

Trial Court Opinion, filed 10/17/17, at 4-6.

In Docket Number 3203-2016, Appellant was charged with one count of Possession of a Controlled Substance, 35 Pa.C.S. § 780-113(a)(16), and one count of Possession of Drug Paraphernalia, 35 Pa.C.S. §780-113(a)(32), stemming from the marijuana and paraphernalia recovered from his person on the date of his arrest. In Docket Number 3202-16, Appellant was charged with two counts of Possession of a Controlled Substance with the Intent to Deliver ("PWID"), 35 Pa.C.S. § 780-113(a)(16), one count of Possession of a Controlled Substance, and seven counts of Possession of Drug Paraphernalia stemming from the 26.96 grams of marijuana, 45 units of LSD, empty baggies, scale, marijuana grinder, hypodermic needle, and $8,865.00 cash recovered from his dorm room.

On September 20, 2016, Appellant filed a motion to suppress the evidence seized from his person and dorm room. On May 1, 2017, after conducting evidentiary hearings on December 19, 2016, and April 18, 2017, the trial court denied Appellant's motion.

On August 2, 2017, the court presided over a consolidated non-jury trial on stipulated facts and found Appellant guilty on all charges. The court sentenced Appellant to an aggregate term of three to 23 months'

incarceration, to be followed by 4 years' probation on Docket No. 3202-16. On Docket No. 3203-16, the court imposed no further punishment. After the denial of Appellant's post-sentence motion for reconsideration on September 6, 2017, Appellant filed this timely appeal on September 15, 2017.[1]

Appellant presents the following question for our consideration:

**WAS THE TRIAL COURT'S LEGAL CONCLUSION THAT MR. YIM WAS NOT SUBJECT TO ANY STATE ACTION WHEN VILLANOVA UNIVERSITY PUBLIC SAFETY OFFICERS SEARCHED HIS DORM ROOM WITHOUT A WARRANT ERRONEOUS?**

Appellant's brief, at 4.

In reviewing a trial court's decision to deny a suppression motion, our standard of review is as follows:

> In reviewing the denial of a suppression motion, our role is to determine [ ] whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court

_____

[1] On December 1, 2017, this Court issued a Rule to Show Cause why the appeal at Docket No. 3118 EDA 2017 should not be quashed as untimely filed on September 11, 2017, when judgment of sentence was imposed on August 7, 2017. As we accept Appellant's response that his timely post-sentence motion for reconsideration pertained to both docketed cases, we deem the present appeal timely.

> turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.
>
> ***Commonwealth v. Jones***, 605 Pa. 188, 988 A.2d 649, 654 (2010) (internal quotations and citations omitted). Our scope of review is limited to the evidence presented at the suppression hearing. ***In re L.J.***, 622 Pa. 126, 79 A.3d 1073, 1080 (2013).

***Commonwealth v. Thran***, 185 A.3d 1041, 1043 (Pa.Super. 2018).

Appellant's challenge against the order denying his motion to suppress centers on the argument that Villanova University's Public Safety ("VUPS") officers were *de facto* state actors, subject to the dictates of the Fourth Amendment, when they searched Appellant's dorm room. This is so, he maintains, either because the uniformed officers were the only University agents with the authority to exercise police-like powers on Villanova's campus, or because they worked "in concert" with the Radnor Township Police Department in conducting a search of Appellant's dorm room, where LSD and other contraband were found. We disagree.

The Fourth Amendment's protection against unlawful searches and seizures applies only to actions by the government, as "[i]ts origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority[.]" ***Burdeau v. McDowell***, 256 U.S. 465, 475 (1921). It follows, therefore, that "the proscriptions of the Fourth Amendment and Article I, § 8, do not apply to searches and seizures conducted by private individuals." ***Commonwealth v. Faurelus***, 147 A.3d 905, 909 (Pa.Super. 2016) (quoting

*Commonwealth v. Harris*, 572 Pa. 489, 513, 817 A.2d 1033, 1047 (2002) (citations omitted).

Where, however, private individuals act not of their own accord but, instead, as an instrument or agent of the state, they will be deemed state actors subject to the proscriptions of the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564, 595 (1971). Decisional law of this Commonwealth has examined the question of what constitutes state action in such circumstances.

> As set forth [in the Pennsylvania Supreme Court decision *Commonwealth v. Corley*, 491 A.2d 829 (Pa. 1985)], therein, the guiding principles are those first established by the United States Supreme Court in *Lugar v. Edmondson Oil Co*., *Inc*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In *Lugar*, the Supreme Court held that the conduct allegedly causing the deprivation must be fairly attributable to the state. In explaining the "fair attribution" test, the United States Supreme Court stated:
>
>> [Our] cases reflect a two-part approach to the question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the state .... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because ... his conduct is otherwise chargeable to the state.
>
> *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754, 73 L.Ed.2d at 495. The critical factor for purposes of determining whether state action is involved is whether the private individual, in light of all the circumstances, must be regarded as having acted as an "instrument" or agent of the state. *Corley*, 507 Pa. at 548, 491 A.2d at 832, *citing* *Coolidge*[, 403 U.S. at 487.] This Court made clear in *Corley* that mere cooperation with the authorities alone does not constitute "state action." In other words, the mere fact that police and prosecutors use the results of an individual's

- 7 -

actions does not, alone, elevate those actions to the level of state action. Where, however, the relationship between the person committing the wrongful acts and the State is such that those acts can be viewed as emanating from the authority of the State, the principles established in *Corley* dictate a finding of state action.

*Price*, 672 A.2d 280, 283–84 (Pa. 1996).

In the wake of an unprovoked, LSD-induced violent attack committed by Appellant's roommate and guests, who later required hospitalization for LSD overdose, Villanova University's administration determined its duties to ensure student safety required it to ascertain whether LSD or other contraband that could make its way elsewhere on campus remained in the offenders' dorm room. The University made this decision unilaterally, and it initiated a search of Appellant's dorm room in accordance with University regulations,[2] without input, oversight, or assistance from Radnor Township Police.

As noted, *supra*, the initial plain view search conducted by administrators and VUPS officers uncovered a grocery bag of what appeared

_____

[2] On this point, the trial court found:

The evidence demonstrated that [Appellant] entered a housing contract with the University and agreed to its terms and conditions to secure on-campus housing. By the terms of the contract [Appellant] is required to comply with all University policies, procedures and regulations and the University reserved the right to enter a dormitory room without prior permission if it has reason to believe that an emergency exists or that violations of University policy are occurring or may have occurred.

Trial Court Opinion, at 8.

to be professionally packaged and sealed marijuana, a scale, a large hypodermic needle on a desk, and a large sum of cash on a shelf above the desk. Only then did the University contact Radnor Township Police to inform them that an ongoing room search uncovered what appeared to be evidence of illegal drug possession.

The police arrived and remained in the hall on stand-by while VUPS officers completed their search, which uncovered LSD from inside Appellant's desk. According to testimony, Radnor police never participated in the search or directed the actions of the VUPS officers in completing their search. N.T. 12/19/16, at 20-21; 4/18/17, at 30-31.

This evidence supports the trial court's conclusion that the University conducted its search on its own terms and in accordance with its own policies aimed at preserving student safety.[3] Proceeding in this way, it did not act jointly with the police or at the behest of the police in carrying out its search. Only after completing its task in this regard did the University then turn over to police what it believed to be evidence of a crime.

---

[3] The University unilaterally conducted a search of Appellant's dorm room in a manner consistent with university policies and the housing contract into which Appellant willingly entered. The housing contract provides that the University may be permitted to enter and inspect rooms without prior permission if there is reason to suspect there are unsafe conditions. The Student Handbook repeats these provisions and provides that "a student's personal privacy should be maintained at all times unless the University has reason to suspect that a dangerous situation exists or that violations of University policy have occurred or are occurring." **See** Supplemental Memorandum of Law in Support of Motion to Suppress, filed 12/2/16, at 3.

As explained above, the mere fact that police and prosecutors use the results of a private actor's search alone does not transform the private action into state action. *Price*, 672 A.2d at 284. Because the present facts demonstrate nothing more than the University's conveyance of privately obtained evidence to police, the University's search is not attributable to the state on this basis.[4]

Likewise, we reject Appellant's alternate argument that VUPS had been delegated a public function by the state. The "public function" test of private actor conduct pertains to "where a private actor is performing activities or services which traditionally have been the exclusive prerogative of the state." *Hennessy v. Santiago*, 708 A.2d 1269, 1276 (Pa.Super. 1998) (identifying

---

[4] Appellant cites federal decisions discussing circumstances when a private actor works jointly with the state, making him a state actor for purposes of Section 1983 liability, but he fails to demonstrate the existence of such circumstances in his case. For instance, Appellant notes that in *Fleck v. Trustees of University of Pennsylvania*, 995 F.Supp.2d 390 (E.D. Pa. 2014), the district court recognized Section 1983 jurisprudence has left open the circumstances under which "private security officers may be held to have performed public functions for purposes of § 1983 suits . . . . [if they] work[] jointly with a township police officer" *Id.* at 402 (citing *Padover v. Gimbel Bros, Inc.*, 412 F.Supp. 920 (E.D. Pa. 1976) (denying § 1983 defendants' motion to dismiss for want of state action where complaint alleged two private security guards, one of whom was also municipal police officer, jointly arrested and assaulted plaintiff)).

Here, the Radnor Township Police Department neither directed nor participated in the search of Appellant's room. Therefore, the cases upon which Appellant relies to advance his claim that the University and the police department worked jointly in performing the search are inapposite given the facts of this case.

"public function" test as one of several paradigms of state action by a private individual developed by United States Supreme Court jurisprudence).

Appellant maintains that, "despite nominally referring to themselves as mere 'security' officers, in fact, [VUPS] served the public function of a formal police force and were state actors under the public function test." Appellant's brief, at 21. Specifically, Appellant contends:

> [T]he officers, who wore uniforms and were otherwise a formal security force, were the *only* police force for the University at the time. They responded to all emergencies or allegations of criminal conduct, and were even "allowed to restrain" individuals suspected of wrongdoing. Whatever their title, the VUPS officers were the *de facto* police on campus at the time of the search. Indeed, despite encountering the two students and the visitor who had ingested LSD just after midnight, the VUPS officers were solely responsible for the criminal investigation of the source of the drugs well into the following afternoon when the search was conducted. After all, Director Tedjeske was clear that the VUPS officers did not call Radnor Township Police to the scene until *after* they had discovered drugs in [Appellant's] room. The VUPS had therefore "been delegated a public function by the State," sufficient to render them state actors.

Appellant's brief, at 21-22.

The record belies Appellant's argument that the VUPS was a police force—let alone the *only* police force, as the University resides in Radnor Township and comes within the municipal jurisdiction of the Radnor Township Police Department. Indeed, testimony offered at both suppression hearings established that VUPS officers oversaw security on campus, but they carried no weapon or handcuffs, and they possessed no arrest powers.

Furthermore, when the administrative search of Appellant's dorm room discovered evidence of drug dealing, the University called the police for the purpose of taking evidence retrieved from the room, arresting suspects, and filing charges.

Hence, the record makes clear that no plenary police powers were vested upon VUPS from state laws. As such, Appellant's reliance on **Fleck**, **supra**, and **Henderson v. Fisher**, 631 F.2d 1115 (3d Cir. 1980), two Section 1983 cases, to make the case that VUPS officers served the public function of a formal police force is misplaced.

In **Henderson**, the Third Circuit Court of Appeals observed the University of Pittsburgh campus police acted under color of state authority by virtue of state legislation specifically stripping the University of Pittsburgh of its wholly private character and deeming it "an instrumentality of the Commonwealth to serve as a State related institution." The Pennsylvania legislature, therefore, declared the University of Pittsburgh derives its authority from the state, the Third Circuit noted.

Furthermore, the legislature also delegated to the campus police the very powers which the municipal police force of Pittsburgh possesses, the Court continued. Therefore, because the campus police department was endowed by the state with powers and functions governmental in nature, it was a state actor. **Id**. at 1118.

In **Fleck**, the federal district court reasoned that Penn's "state-actor status rests not on its source of funds but on the police service performed[.]"

- 12 -

*Id.* at 401. In this respect, Penn's police department enjoyed plenary police powers conferred upon it through Pennsylvania law, the district court found. Thus having plenary powers in a patrol-zone territory once the "exclusive prerogative" of the City of Philadelphia, the Penn police department was a state actor, the court concluded.

In contrast, the powers vested unto VUPS officers were not tantamount to those within the exclusive prerogative of the state. Instead, they derived from the University and were limited in scope relative to municipal police powers.

For these reasons, we conclude that the trial court committed no abuse of discretion or error of law in making its determination that VUPS officers were not state actors for purposes of the Fourth Amendment. As such, the court appropriately refused to invoke the exclusionary rule under the Fourth Amendment and denied Appellant's motion to suppress.

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/18

- 13 -