J-S46039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SEREYRATH VAN | : | |
| | : | |
| Appellant | : | No. 2350 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 25, 2018
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001628-2016

BEFORE: PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED DECEMBER 10, 2019**

Appellant, Sereyrath Van, appeals from the aggregate judgment of sentence of six and one half to thirteen years' incarceration, which was imposed by the Honorable Diane E. Gibbons, after his conviction at a stipulated bench trial for Possession With the Intent to Deliver (PWID) (cocaine), PWID (marijuana), Possession of Drug Paraphernalia, Criminal Use of Communication Facility, and Conspiracy.[1] We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts of this case as follows,

> The investigation that lead [sic] to [Appellant's] arrest was initiated based on information received from a confidential

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), (32), 18 Pa.C.S. §§ 7512(a), 903, respectively.

informant.  Officer Gansky first had contact with the informant a week or two [] prior to December 14, 2015.  On December 14th, the informant arrived at the Bensalem Township Police Department and spoke to Officer Gansky.  The informant advised Officer Gansky that he had personal knowledge regarding an individual identified as Gunnar Derry.  He stated that Derry sells marijuana, that he was seen with multiple pounds of marijuana in the past and that he was currently offering to sell marijuana.  Officer Gansky obtained a photograph of Gunnar Derry from police records and showed that photograph to the informant.  The informant confirmed the individual depicted in the photograph was the same individual the informant knew to be selling marijuana.

Working with the police, the informant contacted Derry and arranged to purchase 5 pounds of marijuana for $15,000.  Although Officer Gansky was in and out of the room being utilized by the confidential informant, he heard the confidential informant set up the purchase.  After speaking to Derry, the confidential informant advised Officer Gansky that Derry would be arriving at the Applebee's Grill & Bar located on Street Road in Bensalem Township, Bucks County, at 4:45 p.m. that day to make the sale.  The confidential informant further advised Officer Gansky that Derry's supplier would be present and participate in the transaction.  Officer Gansky testified that he was advised that Derry would act as the "middleman" in the transaction.  Based on information received from Derry, Derry's supplier was described as an Asian male who would be driving a white BMW Alpine with distinctive rims.  Derry sent photographs of the marijuana to be purchased and the vehicle that his supplier would be driving to the confidential informant's cellphone.  Those photographs were preserved by Officer Gansky and were admitted into evidence as Exhibits CS-1 and CS-2.

Police then proceeded to the Applebee's to conduct surveillance.  Officer Gansky made the following observations.  At approximately 4:45 p.m., Derry arrived at the Applebee's parking lot in a Volkswagen.  Immediately after Derry's arrival, a white BMW drove into the parking lot.  The vehicle matched the description of the vehicle Derry's supplier was reported to be driving.  The driver and sole occupant of the vehicle was an Asian male.  When the BMW arrived, Derry immediately got out of the Volkswagen and got into the passenger seat of the BMW, which then circled the parking lot three times before parking.  Derry and [Appellant] then got out of the BMW and approached the

Applebee's. Derry was detained directly outside the Applebee's. Sergeant Schwartz located [Appellant] seated at the bar. Sergeant Schwartz told [Appellant] he was being detained, placed [Appellant] in handcuffs, patted him down, and took him to the area immediately outside the front entrance where Officer Gansky identified him as the individual who had arrived in the BMW and interacted with Derry in the parking lot. After the smell of raw marijuana was observed emanating from the trunk of the BMW, the BMW was searched. Five freezer bags of marijuana [were] found inside a box in the trunk. [Appellant] was then transported from the scene.

TCO, 12/20/18 at 3-4 (citations to notes of testimony omitted). Following his arrest, Appellant waived his **Miranda**[2] rights and gave a statement admitting that he had gone to the Applebee's to sell marijuana pursuant to the arrangements made with the confidential informant. At a subsequent search of Appellant's apartment, police seized approximately 14 pounds of marijuana, approximately 8.2 ounces of cocaine, cutting agents, digital scales, packing materials, a cocaine press and a Smith and Wesson .9 mm firearm. TCO, 12/20/18 at 2.

On September 12, 2016, Appellant filed a motion to suppress any and all physical evidence and his statement given to police; Appellant challenged the constitutionally of his stop, detention and arrest, the statement he gave to police and the subsequent search of his apartment. The trial court held a suppression hearing on June 20, 2017.

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1996).

Appellant withdrew his motion to suppress his statement to police and physical evidence obtained from a search of his apartment. *See* Letter from Attorney Louis R. Busico, 6/20/17; N.T. 6/25/18 at 2. Therefore, the only issues before the trial judge at the suppression hearing were whether the encounter between police and Appellant inside the Applebee's was an investigatory detention or arrest, and whether the police had the requisite probable cause or reasonable suspicion. After taking the matter under advisement and receiving briefs from the parties, the trial court denied the motion to suppress by Order dated December 22, 2017.

The trial court announced its findings of fact and conclusions of law at a December 25, 2017 hearing. The trial court found, "[t]here was really no dispute as to the facts, whether the facts were elicited on direct examination or cross-examination of the Commonwealths' witnesses." N.T. 6/25/18 at 5-6. "There is no inconsistence among the testimony that was presented." *Id.* The trial court asked counsel for Appellant and the Commonwealth if there was "any specific finding of fact or any conflict in the evidence that they saw that you would like me to make a ruling on." *Id*. at 6. Counsel for Appellant and the Commonwealth both responded, "[n]o." *Id.* The trial court found Officer Gansky and Sergeant Schwartz "credible" and "uncontradicted." *Id.* Additionally,

> [w]ith regard to conclusion of law, the issue is whether or not at the time [Appellant] was detained, whether that was an investigatory detention or that was an arrest. . . . I find that the informant that was utilized in this case that began the

investigation into the alleged delivery of marijuana into Bucks County was a known informant, that the information was provided by the informant that a deal was going to occur in Bucks County. The police monitored the contact between the confidential informant and an individual identified as Mr. Derry. . . . and that the police were able to confirm a number of allegations that were being made by that informant sufficient to establish the reliability of that informant; specifically, the source, the type of controlled substance, the source of the controlled substance, the location of the delivery, the time of the delivery, and the individuals involved as well as the vehicle involved.

I find that while it was a close call, I find that the police actions in taking and stopping [Appellant] and advising him that he was, quote, end quote, being detained, was not an arrest, that he was – that that was investigatory detention for [Appellant] to be investigated and some subsequent investigation to be conducted.

*Id.* at 7-8.

The Appellant then proceeded to a stipulated bench trial on that same date and was convicted of the above-listed counts. On the same day, the trial court sentenced Appellant to the aforementioned judgment of sentence. On August 1, 2018, Appellant filed this timely direct appeal.[3]

Appellant presents the following issue(s) for our review:

1. Whether the [t]rial [c]ourt erred by concluding that [Appellant] was merely subjected to an investigative detention rather than a custodial arrest by police while inside of the Applebee's?

---

[3] On August 30, 2018, Appellant filed his timely statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed its opinion pursuant to Pa.R.A.P. 1925(a) on December 20, 2018. Subsequently, Appellant filed a motion with this Court to permit him to file a supplemental Rule 1925(b) Statement, which this Court granted. Appellant filed a timely supplemental Rule 1925(b) Statement on March 12, 2019. The trial court filed its supplemental Rule 1925(a) opinion on May 29, 2019.

2. Whether the [c]ourt erred in denying suppression insomuch as the arrest was not supported by probable cause as law enforcement were acting on vague and uncorroborated information from a confidential source that had yet to be proven reliable?

3. Whether the [t]rial [c]ourt erred by denying [Appellant's] motion to suppress physical evidence because under the totality of the circumstances law enforcement lacked reasonable suspicion to effectuate an investigative detention as they were acting on vague and uncorroborated information received from a confidential source that had yet to be proven reliable?

4. Whether the [t]rial [court] erred in denying [Appellant's] motion to suppress as law enforcement failed to adduce specific, articulable reasons to believe that [Appellant] was armed and dangerous thereby justifying a frisk?

5. Whether the [t]rial [c]ourt abused its discretion in denying the motion for reconsideration of sentence without first allowing [Appellant] to offer the mitigating evidence proffered by counsel in the motion?

Appellant's Brief at 9.

Appellant's first three issues on appeal necessitate an analysis of his encounter with police inside the Applebee's. Appellant argues the encounter was the functional equivalent of an arrest and the police lacked probable cause to make that arrest. Appellant urges this Court to conclude that "the suppression court erred that Appellant was subjected to an investigative detention rather than a seizure inside of the Applebee's Restaurant." Appellant's Brief at 15. Appellant argues that totality of the circumstances clearly establish that Appellant was in the functional equivalent of custody while inside of the restaurant. Appellant argues that this arrest was not

supported by probable cause. Appellant argues, in the alternate, that the investigative detention was not supported by reasonable suspicion.

We consider Appellant's suppression issues in light of the following standard of review:

> In reviewing the denial of a suppression motion, our role is to determine whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Yim***, 195 A.3d 922, 926 (Pa. Super. 2018) (citations and internal brackets omitted). Our scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing. ***Commonwealth v. Fulton***, 179 A.3d 475, 487 (Pa. 2018).

The trial court determined that Appellant was subjected to an investigative detention inside the Applebee's. N.T. 6/25/18 at 7-8.

In evaluating the interaction between Appellant and the police inside the Applebee's we start with the fact that,

> [t]he law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention ...; and (3) a custodial detention. A mere

encounter can be any formal or informal interaction between an officer and a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond. A mere encounter does not need to be justified by any level of police suspicion. [A]n 'investigative detention' ... carries an official compulsion to stop and respond. Because an investigative detention has elements of official compulsion it requires reasonable suspicion of unlawful activity. [A] custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. A custodial detention requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

*Commonwealth v. Dix*, 207 A.3d 383, 388 (Pa. Super. 2019), *appeal denied*, No. 211 EAL 2019, 2019 WL 4164778 (Pa. Sept. 3, 2019) (internal citations and quotation marks omitted). "The key difference between an investigative detention and a custodial detention is that the latter involves such coercive conditions as to constitute the functional equivalent of an arrest." *Commonwealth v. Gonzalez*, 979 A.2d 879, 887 (Pa. Super. 2009) (internal citation and quotation marks omitted).

In determining whether a detention is investigative or custodial, courts are to consider:

The basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention, the location of the detention (public or private); whether the suspect was transported against his will (how far, why); and, the investigative methods used to confirm or dispel suspicions.

*Commonwealth v. Smith*, 172 A.3d 26, 32 (Pa. Super. 2017) (citation omitted). "The handcuffing of a suspect, by itself, does not convert an investigative detention into an arrest." *Id.* In addition, "it must be

remembered that every [investigative detention] involves a stop and period of time during which the suspect is not free to go but is subject to the control of the police officer detaining him." *Commonwealth v. Rosas*, 875 A.2d 341, 348 (Pa. Super. 2005) (citation and quotation marks omitted).

In determining Appellant was subjected to an investigatory detention inside the Applebee's, the trial court opined,

> Based on the fact that [Appellant] was detained for only a brief period of time in order to confirm that he was the individual who met with the other suspect, that he was detained in a public place, that he was only moved a short distance and that the police acted quickly to confirm their suspicions with a minimal use of force, this Court found that [Appellant's] initial detention at the scene constituted an investigatory detention. The fact that [Appellant] was handcuffed inside the restaurant, does not alone convert an investigative detention into an arrest.

TCO, 5/29/19 at 5 (citations omitted). We find no error in the trial court's conclusion of law that Appellant was subjected to an investigative detention and not an arrest inside the Applebee's restaurant. This conclusion is consistent with relevant case law providing that a public detention of limited duration is not an arrest merely because the suspect is placed in handcuffs. *Smith*, 172 A.3d at 32. Furthermore, the trial court's findings are supported by the record. N.T. 6/20/17 at 41, 64-67, 69-71, 73-75; *See Fulton*, 179 A.3d at 487; *Yim*, 195 A.3d at 926.

Appellant's third issue is that the trial court erred in determining that police had reasonable suspicion to conduct an investigatory detention inside the Applebee's. The court opined,

- 9 -

[t]he information was provided by a known informant. . . The informant's information was based on first-hand knowledge. The informant arranged the drug purchase in the presence of police and produced photographs of the marijuana and one of the vehicles sent to his telephone while the sale was being arranged. Police surveillance thereafter confirmed the informant's information in all material respects. Gunnar Derry arrived at the time and location that had been prearranged. An Asian male driving a BMW that matched the description of the vehicle that would be driven by Derry's supplier also arrived at the time and location that had been prearranged. Upon their arrival, the two men immediately met up and began circling the parking lot. The information provided by the informant and the observations of police, taken in conjunction with the reasonable inferences an experienced narcotics detective could properly derive from all the facts and circumstances known to him, were clearly sufficient to allow police to reasonably conclude that criminal activity was afoot. [Appellant's] motion to suppress was therefore properly denied.

TCO, 12/20/18 at 6-7. Additionally, the confidential informant further advised Officer Gansky that Derry's "source" would also be arriving [at the Applebee's]. N.T. 6/20/17 at 8. Officer Gansky understood that to mean that "Gunner Derry was acting like the middle-man in this drug transaction, and his source of the marijuana was this Asian man." *Id.* Gunnar Derry's source was described as an Asian male and would be driving a white-colored BMW with rims. *Id.* Officer Gansky was assigned to the special investigations unit where he investigated narcotics crimes for six years. *Id.* He assisted and investigated numerous defendants related to selling drugs and usage of drugs, attending training specifically on drug trafficking and techniques and identification put on by the state, local and federal level. *Id.* at 6. He was

involved with over 200 cases that involved the use of a confidential informant and controlled drug buys. *Id.* 6-7.

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

> [T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity.

> In making this determination, we must give due weight...to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Luczki*, 212 A.3d 530, 544-45 (Pa. Super. 2019) (internal citations and quotation marks omitted).

"To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens." *Commonwealth v. Barber*, 889 A.2d 587, 593 (Pa. Super. 2005).

> When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal

activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

*Id.* at 593-94. "Though not strict requirements, these factors [the veracity of the informant, the reliability of the informant, and the informant's basis of knowledge] help determine how much faith law enforcement can place in the information they are given." *Commonwealth v. Griffin*, 954 A.2d 648, 651 (Pa. Super. 2008) (internal citation omitted).

> First, the veracity of the informant may be partly assessed by whether the identity of the informant is known to the police or whether the tip is anonymous. An anonymous tip is to be treated with particular suspicion, and may not provide a basis for a[n investigative detention] in situations in which information from a known informant would. A person whose identity is known to the police is far less likely to provide false information out of fear of reprisal. Our Supreme Court has explained the distinction, saying: "a known informant places himself or herself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk."

> Second, the Pennsylvania Supreme Court has also provided guidance on assessing the reliability of the information. If an informant is able to provide details about the "future actions not ordinarily easily predicted[,]" then the information is considered to have a higher degree of reliability. This ability to predict future events is relevant because "only a small number of people are generally privy to an individual's itinerary, [and] it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities."

> Basis of knowledge, the third factor, refers to how the informant obtained the information. The more intimate the basis of knowledge, the more likely the information is to be trustworthy.

> These factors serve as a starting point for our analysis. However, in a totality of the circumstances test, other factors may also be taken into account to form the basis of a[n investigative

- 12 -

detention]. Innocent facts, when taken together, may combine to give a police officer reasonable suspicion. Moreover, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience."

*Id.* at 651-52.

We find no error in the trial court's conclusion of law that police had reasonable suspicion to conduct an investigative detention of Appellant inside the Applebee's restaurant. *See also Commonwealth v. Gutierrez*, 36 A.3d 1104 (Pa. Super. 2012) (reasonable suspicion found where known informant gave predictive information that forecasted the movement of the suspect in question by placing him at a particular time and place, driving a specific vehicle, and that information was corroborated by police investigation). Furthermore, the trial court's factual findings are supported by the record at the suppression hearing. N.T. 6/20/17 at 15, 17-22, 11-14; Exhibit CS-1, CS-2; *See Fulton*, 179 A.3d at 487; *Yim*, 195 A.3d at 926.

Appellant's fourth issue on appeal is that the police were not justified to frisk and search him inside the Applebee's. The trial court stated, "[t]he question of whether police properly frisked [Appellant] following his initial detention was not raised in [Appellant's] pre-trial motion to suppress evidence or otherwise addressed." TCO, 12/20/18 at 7. "The only suppression issue presented to this [c]ourt was the legality of his detention." *Id.* After a careful review of the record, we agree with the trial court. Issues not raised at the trial court level are waived and cannot be raised for the first time on appeal.

Pa.R.A.P. 302(a). As Appellant did not raise the issue below, it is waived for the purposes of appeal. *See id.*

Appellant's fifth issue is that "the trial court abused its discretion in denying the motion to reconsider without first allowing [Appellant] to offer the mitigating evidence proffered by counsel in the motion." Appellant's Brief at 9. The trial court opined,

> [t]he only evidence proffered in mitigation was that "[a]fter his arrest but prior to sentencing, [Appellant] began working a full time job." Post-Sentence Motion, at 5. The decision as to whether to schedule a hearing on a defendant's post-sentence motion lies within the discretion of the trial court. Pa.R.Crim.P. 720(B)(2)(b). In the instant case, this Court imposed sentences in the standard range of the sentencing guidelines despite the existence of several aggravating sentencing factors. N.T. 6/25/18 at 47-60. The fact that he obtained employment after his arrest was not evidence that would impact the sentence imposed under the facts and circumstances of this case.

TCO at 7-8. "The judge should . . . determine whether a hearing or argument on the [post-sentence] motion is required, and if so, shall schedule a date or dates certain for one or both." Pa.R.Crim.P. 720(B)(2)(b). "There is no requirement that oral argument be heard on every post-sentence motion." Pa.R.Crim.P. 720, Comment. Appellant filed a timely post-sentence motion. The trial court reviewed the motion, determined a hearing was not required, and denied the motion. The trial court acted within its power and discretion in denying the motion without a hearing. Appellant's suggestion that the trial court was required to schedule a hearing or argument on his post-sentence motion lacks merit.

- 14 -

Accordingly, Appellant's judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/19