J-A24036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES O. WATSON, | : | |
| | : | |
| Appellant | : | No. 2391 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 31, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0000729-2018

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                           Filed: April 22, 2021

Appellant, James O. Watson, appeals from the judgment of sentence of 72 hours to six months of confinement, which was imposed after his convictions at a bench trial for driving under the influence ("DUI") of a controlled substance and driving while operating privilege is suspended or revoked.[1]  Appellant challenges the denial of his suppression motion and, for the first time on appeal, the imposition of costs and fines without first considering his ability to pay.[2]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(d)(1)(iii) and 1543(a), respectively.

[2] We discern the challenges to his costs and fines as two separate claims.  **See** 42 Pa.C.S. § 9721(a)(1)-(5) (list of sentences that can be imposed by the court includes fines but not costs), (c.1) (defining "costs" in separate subsection:  "in addition to the alternatives set forth in subsection (a), the

On July 3, 2018, the trial court held a hearing on Appellant's motion to suppress the results of a blood draw taken pursuant to his arrest for DUI. The sole witness was Corporal Michael Burton of the Whitemarsh Township Police Department. N.T., 7/3/2018, at 4. When the Commonwealth asked the corporal, "Do you have a particular method or practice in asking for consent to chemical testing that you use?", the witness answered:

> Once I place someone under arrest for suspicion of driving under the influence of alcohol or controlled substance, generally we will take them to the rear of the car to a safe location, and then we will read them the DL[-]26[3], the implied consent form. I always read all four paragraphs word for word and make sure that the suspect understands what I'm reading to him or her.

*Id.* at 5. Corporal Burton then testified that, on the night of September 16, 2017, he was working as the field testing officer at a DUI checkpoint. *Id.* at 6. He continued that, when Appellant entered the checkpoint, the initial contact officer smelled marijuana emanating from Appellant's vehicle, which Appellant admitted to smoking. *Id.* at 7-8. Corporal Burton explained that the initial contact officer escorted Appellant to him in handcuffs, but he removed the handcuffs since Appellant was cooperative. *Id.* at 8-10.

The Commonwealth asked Corporal Burton, "Did you, in fact, read the full DL[-]26 form?", and the corporal answered, "I did." *Id.* at 11.

---

court shall order the defendant to pay costs") and § 9726(a)-(c) (defining "fine").

[3] The DL–26 form contains warnings of the potential consequences of a person's refusal to consent to a blood test.

- 2 -

The Commonwealth asked the witness, "After you read the form, did the defendant indicate that he would consent to give blood?", and the witness replied, "He did." *Id.* at 13.

When asked if Appellant changed his mind at any point and told the corporal that he did not want to consent to the blood test, the witness answered, "No." *Id.*

When asked if he raised his voice with Appellant or if he threatened Appellant in order to gain his consent to the blood draw or for any other reason, Corporal Burton answered negatively. *Id.* at 11.

At the conclusion of the hearing, the trial court denied the motion to suppress. *Id.* at 28.

The procedural history underlying this appeal continues as follows:

On July 31, 2018, following a bench [trial] . . . , Appellant was found guilty of [the aforementioned charges]. On that same date, th[e trial c]ourt sentenced the Appellant to a term of imprisonment for not less than 72 hours nor more than six months in the Montgomery County Correctional Facility, with commitment beginning on Friday, August 17, 2018 at 6:00 p.m. In addition, [for the DUI count,] Appellant was sentenced **to pay the costs of prosecution and a mandatory fine of $1,000.00** within the six-month period of supervision. The court further sentenced the Appellant **to pay a $200.00 fine and the costs of prosecution** for the Driving Under Suspension charge, as well as some other special considerations. (N.T. 7/31/18 at 23-24).

Trial Court Opinion, dated December 10, 2018, at 1 (emphasis added). The trial court did not make a determination of Appellant's ability to pay costs or fines prior to imposing them.

On August 14, 2018, Appellant filed a timely Notice of Appeal. On August 15, 2018, th[e trial c]ourt ordered Appellant to file a Concise Statement of Matters Complained of on Appeal. On September 4, 2018, Appellant filed an Application for Extension to File a Concise Statement, which th[e trial c]ourt granted on September 11, 2018, permitting the Appellant an additional 30 days to file his Concise Statement. On October 11, 2018, Appellant filed a timely Concise Statement of Matters Complained of on Appeal.

*Id.* at 2. Appellant's concise statement raised only one challenge – that the trial court erred in denying his motion to suppress the results from the blood draw.

Appellant now presents the following two issues for our review:

1. Did the trial court err in denying [Appellant]'s motion to suppress where the Commonwealth failed to meet its required burden of proving that [Appellant] made a clear and unequivocal waiver of his Fourth Amendment rights when the only evidence of consent to search that was presented was a police officer's conclusory and vague statement asserting that [Appellant] consented to a blood search and where the atmosphere surrounding the search was coercive ?

2. Did the sentencing court illegally impose costs on [Appellant], who is indigent, without making a determination regarding his ability to pay costs?

Appellant's Brief at vii (suggested answers omitted).

**Suppression**

Appellant first contends that "[t]he Commonwealth did not prove that [Appellant] consented to a warrantless blood draw" and that any consent given was "the product of coercion" and "psychological pressure" or "unchecked misleading statements being made to individuals being processed." *Id.* at 10, 31, 35. Appellant continues that the Commonwealth

"failed to prove that [he] was given required warnings before the warrantless blood test." *Id.* at 33.

> In reviewing the denial of a suppression motion, our role is to determine whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.  Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court[.]

*Commonwealth v. Yim*, 195 A.3d 922, 926 (Pa. Super. 2018) (citations and internal brackets omitted).  Our scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing.

*Commonwealth v. Fulton*, 179 A.3d 475, 487 (Pa. 2018).

Corporal Burton – the only witness to testify at the suppression hearing – explicitly testified that he read the full DL-26 form to Appellant, N.T., 7/3/2018, at 11, which was his normal practice.  *Id.* at 5.  Appellant was thereby given the required warnings.

The corporal also unambiguously testified that, after he read the DL-26, Appellant indicated that he consented to give blood and never retracted that

consent or otherwise told police that he changed his mind. *Id.* at 13.[4] The trial court's factual finding that Appellant consented to the blood draw thus is supported by the record. *See Yim*, 195 A.3d at 926.

Additionally, there is no evidence that Appellant's consent was "the product of coercion" or "psychological pressure[,]" Appellant's Brief at 10, 31, as Corporal Burton stated that he never raised his voice nor threatened Appellant for any reason. N.T., 7/3/2018, at 11. The lack of coercion is further demonstrated by the fact that Appellant's handcuffs had been removed prior to the corporal reading the DL-26 form to him and prior to Appellant giving his consent. *Id.* at 9-10.[5] Appellant likewise fails to designate any evidence

_____

[4] As for Appellant's assertion, "[i]f [Appellant] merely held out his arm, then that . . . did not constitute consent[,]" Appellant's Brief at 18, there is no evidence to suggest that Appellant gave his consent by merely gesturing. Also, Corporal Burton testified that the ambulance where Appellant's blood draw occurred was about 20 feet away from where they were standing when he obtained Appellant's consent, N.T., 7/3/2018, at 13, so there is no basis to infer that Appellant would have held out his arm more than six yards away from where his blood was actually going to be drawn.

As for Appellant's conjecture that an officer could "proceed[] with a warrantless blood draw until the defendant stops objecting[,]" Appellant's Brief at 20, there is no evidence that Appellant ever objected to the blood draw, and Corporal Burton's testimony that Appellant was cooperative and did not indicate that he had changed his mind about the blood test strongly implies that Appellant never objected. N.T., 7/3/2018, at 9-10, 13.

[5] As for Appellant's contention that other officers at DUI checkpoint may have "threaten[ed] or coerce[d] Appellant before they turned him over to Corporal Burton" or "could have issued all manner of coercive threats to [Appellant,]" Appellant's Brief at 12, 25, this suggestion is pure speculation, based upon no evidence of record whatsoever.

of "unchecked misleading statements being made to individuals being processed[.]" Appellant's Brief at 35.

Accordingly, "the suppression court's factual findings are supported by the record[,]" and, consequently, "we are bound by these findings" that Appellant consented to the blood test. *Yim*, 195 A.3d at 926. Appellant's first challenge hence merits no relief.

### Costs and Fines

Appellant next argues that the trial court "erred when it failed to consider [his] ability to pay fines and costs." Appellant's Brief at 35-36. The Commonwealth answers that this "claim is waived because [Appellant] did not raise it at sentencing or in his concise statement of matters complained of on appeal." Commonwealth's Brief at 12. We further note that Appellant's statement of questions involved only refers to "costs", but the "Argument" section of his brief challenges both "fines and costs." *Compare* Appellant's Brief at vii *with id.* at 35.

The Commonwealth is correct that Appellant did not preserve any challenge to costs in his concise statement of the errors complained of on appeal, which normally would result in waiver of that issue pursuant to Pa.R.A.P. 1925(b)(4)(vii). However, a challenge to a trial court's authority to impose costs implicates the legality of the sentence and, *ergo*, can never be waived. *Commonwealth v. Lehman*, 201 A.3d 1279, 1283 (Pa. Super. 2019) (challenge to trial court's authority to impose costs implicated legality

of the sentence, "and, thus, [the appellant] was not required . . . to raise the issue before the trial court"), *aff'd*, 243 A.3d 7 (Pa. 2020); **Commonwealth v. Berry**, 877 A.2d 479, 482 (Pa. Super. 2005) ("challenges to the legality of the sentence are never waived"; "a court may entertain a challenge to the legality of the sentence so long as the court has jurisdiction to hear the claim"). Therefore, we can address the substantive merits of Appellant's challenge to the trial court's order to pay the costs of prosecution as part of his sentence. Appellant's Brief at 35-36. "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Lekka**, 210 A.3d 343, 355 (Pa. Super. 2019) (citation omitted).

The law is unambiguous that "a defendant is not entitled to an ability-to-pay hearing before a court imposes court costs at sentencing." **Commonwealth v. Lopez**, 2021 PA Super 51, *10 (filed March 23, 2021) (*en banc*). Thus, in the current appeal, the trial court did not err in denying Appellant a hearing on his ability to pay costs. ***Id.***

As for Appellant's challenge to the trial court's authority to impose fines, Appellant did not preserve any challenge to fines in his concise statement of the errors complained of on appeal or in his statement of questions involved. Normally, these errors would result in waiver of that issue pursuant to Pa.R.A.P. 1925(b)(4)(vii) and 2116(a), respectively. Nevertheless, this Court has carved out a very narrow exception related to challenges to fines:

> [A] claim that the sentencing court failed to consider the defendant's ability to pay before imposing fines . . . is non-waivable if the **defendant alleges that there was no evidence of record concerning the defendant's ability to pay**, because the issue attacks the legality of the sentence. On the other hand, all other claims concerning the defendant's ability to pay a fine must be preserved by raising them in the first instance before the trial court, because they concern an alleged abuse of discretion by the trial court.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1270 (Pa. Super. 2013) (*en banc*).

In the current action, Appellant never explicitly alleges that there was no evidence of record concerning his ability to pay fines. *See* Appellant's Brief at 35-38. Instead, his reliance on the fact that he was "an indigent client who qualified for the services of the Office of the Public Defender" implies that he is alleging that there was evidence of record concerning his ability to pay fines. *Id.* at 37. Thus, Appellant's claim does not attack the legality of his sentence but, instead, concerns an alleged abuse of discretion. *Boyd*, 73 A.3d at 1270. Accordingly, this issue is waivable, and Appellant has, in fact, waived it by failing to include it in his concise statement of the errors complained of on appeal or statement of questions involved.[6]

* * *

Based on the foregoing, all of Appellant's claims are either meritless or waived. Accordingly, Appellant is not entitled to relief, and we affirm his judgment of sentence.

---

[6] Assuming Appellant had preserved this claim, we would note that, because both fines imposed were mandatory, Appellant was not entitled to a hearing.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date:* 4/22/21